

SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: July 30, 2018

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **APRIL FLORINE MILLER,** | **CASE NO. 17-04008-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| **BARBARA BOND PARKER** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 18-00008-NPO** |
| **APRIL F. WILLIAMSON MILLER** | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER:
## (1) DENYING MOTION TO STRIKE; (2) DENYING
## MOTION TO DISMISS WITHOUT PREJUDICE;
## (3) MODIFYING AUTOMATIC STAY, *SUA SPONTE*; AND
## <u>(4) HOLDING ADVERSARY PROCEEDING IN ABEYANCE</u>

This matter came before the Court for hearing on June 22, 2018 (the "Hearing"), on the

Answer, Defenses & Motions (the "Motion to Dismiss") (Adv. Dkt. 8)[1] filed by April Florine

---

[1] Citations to docket entries are cited:  (a) in the above-referenced adversary proceeding (the "Adversary") as "(Adv. Dkt. ____)"; (b) in the above-styled bankruptcy case (the "Bankruptcy Case") as "(Bankr. Dkt. ____)"; and (c) in the U.S. District Court for the Southern District of Mississippi in *Barbara Bond Parker v. April F. Williamson Miller*, Civil Action No. 2:17-cv-00190-KS-MTP as "(Dist. Ct. Dkt. ____)".

Miller ("April");[2] the Response in Opposition to Defendant's Motion to Dismiss (the "Response to Motion to Dismiss") (Adv. Dkt. 13) filed by Barbara Bond Parker ("Barbara"); April Miller's Reply to Plaintiff's Response to Motion to Dismiss (the "Reply in Support of Motion to Dismiss") (Adv. Dkt. 19) filed by April; the Motion to Strike Rebuttal and Exhibits (the "Motion to Strike") (Adv. Dkt. 20) filed by Barbara; and the Objection to Motion to Strike Rebuttal and Exhibits (Dkt. #20) (the "Response to Motion to Strike") (Adv. Dkt. 22) filed by April in the Adversary.  At the Hearing, Allen Flowers represented April, and R. Lane Dossett represented Barbara.  Having considered the matter and being fully advised in the premises, the Court finds as follows:[3]

### Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of the Adversary pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).  Notices of the Motion to Dismiss and Motion to Strike were proper under the circumstances.

### Facts

For purposes of the Motion to Dismiss, the Court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *See Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Most of the following facts are taken from the Complaint Objecting to Discharge (the "Adversary Complaint") (Adv. Dkt. 1) filed by Barbara.

Barbara and Roger Martin Parker ("Roger") married in 1982; they had two children (the "Parker Children") (Adv. Dkt. 19-1 at 2).  Roger hired April as a part-time bookkeeper for a

---

[2] The Court refers to all persons identified in the pleadings by their first names to avoid confusion since the allegations involve individuals with the same last name.

[3] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

farming business.  (Adv. Dkt. 1-1 at 1-2).  In 2004, Roger and April began an adulterous affair which continued uninterrupted until December 3, 2011, when Roger separated from Barbara and the Parker Children.  (Adv. Dkt. 19-1 at 2).  Shortly thereafter, Roger filed a complaint for divorce in the Chancery Court of Lamar County, Mississippi (the "Chancery Court"), styled *Roger Parker v. Barbara Parker*, Cause No. 2012-0536-GN-DO.  Barbara filed an answer and counterclaim seeking a divorce from Roger on grounds of adultery.  (Adv. Dkt. 19-1).

During the pendency of the divorce proceedings, Barbara commenced an action against April in the Circuit Court of Lamar County, Mississippi (the "Circuit Court"), styled *Barbara Bond Parker v. April F. Williamson Miller*, Civil Action No. 2012-165 (the "Circuit Court Action"), on November 29, 2012.  (Adv. Dkt. 1 at 1).  In the Complaint for Alienation of Affection, Intentional Infliction of Emotional Distress, Accounting and Other Relief (the "Circuit Court Complaint") (Adv. Dkt. 1-1), Barbara asserted causes of action against April for:  (a) fraud; (b) embezzlement; (c) intentional infliction of emotional distress; and (d) alienation of affection. (Adv. Dkt. 1 at 1-2).  The allegations in the Circuit Court Complaint are nonspecific, but in general, Barbara asserted that Roger, April, and April's mother (who she did not identify by name) had conspired to defraud her of her share of the marital estate.  (Adv. Dkt. 1-1).  Barbara asked the Circuit Court to order an accounting for any funds transferred from any account that belonged to Roger and/or Barbara; to impress a lien on the real property owned by April's mother to the extent of the cost of any improvements; to award her compensatory and punitive damages in excess of $75,000.00; and to enjoin April from transferring any assets until a full and complete accounting was completed.  (Adv. Dkt. 1-1 at 6).

In the divorce action, the Chancery Court dismissed Roger's complaint for divorce on March 26, 2014.  (Adv. Dkt. 19-1 at 1).  A hearing was held on Barbara's counterclaim for divorce

on November 4, 2014.  (Adv. Dkt. 19-1 at 1).  In the Final Judgment of Divorce, entered on November 13, 2014, the Chancery Court granted Barbara a divorce from Roger on grounds of adultery as set forth in § 93-5-1 of the Mississippi Code.  (Adv. Dkt. 19-1 at 2).  The Chancery Court found that Barbara and Roger had agreed to a settlement of all property rights between them and, accordingly, incorporated into the Final Judgment of Divorce the Child Custody, Support and Property Settlement Agreement (the "PSA") (Adv. Dkt. 19-1 at 5-16) signed by them on November 4, 2014.

In the meantime, a jury trial in the Circuit Court Action was set to begin on October 31, 2017.  (Adv. Dkt. 8 at 9).  On October 28, 2017, however, April filed a petition for relief (the "Petition") (Bankr. Dkt. 1) under chapter 7 of the Bankruptcy Code.[4]  As a result, the automatic stay under § 362(a) went into effect and stayed the Circuit Court Action.

In her bankruptcy schedules, April listed total liabilities of $188,154.00 and assets of $16,958.00.  (Bankr. Dkt. 9 at 1).  The two largest debts that April listed in her bankruptcy schedules are:  (a) loans made by Roger in the aggregate amount of $77,000.00, which she described as unliquidated and disputed, and (b) Barbara's tort claims in the amount of $75,000.00, which she similarly described as contingent, unliquidated, and disputed.  (Bankr. Dkt. 9 at 14 & 16).  In Amended Schedule J: Your Expenses ("Schedule J") (Bankr. Dkt. 36), April indicated that she has no "dependents" but that her household expenses include those of individuals other than herself.

On November 1, 2017, Barbara filed the Notice of Removal (Dist. Ct. Dkt. 1) in the U.S. District Court for the Southern District of Mississippi (the "District Court") styled, *Barbara Bond*

---

[4] Hereinafter, all code sections refer to the Bankruptcy Code found at title 11 of the U.S. Code, unless otherwise noted.

*Parker v. April F. Williamson Miller*, Civil Action No. 2:17-cv-00190-KS-MTP, for the stated purpose of transferring the Circuit Court Action to this Court for consolidation with the not-yet-filed Adversary.  To that end, Barbara filed the Plaintiff's Motion to Transfer Cause to Bankruptcy Court (Dist. Ct. Dkt. 2) on November 22, 2017.

April filed the Response to Notice of Removal and Motion to Remand (the "Motion to Remand") (Dist. Ct. Dkt. 9) on December 20, 2017; and Barbara filed the Plaintiff's Response in Opposition to Defendant's Motion to Remand (Dist. Ct. Dkt. 13) on December 22, 2017.  Finally, on January 10, 2018, April filed the Debtor's Rebuttal to Plaintiff's Response to Motion to Remand (Dist. Ct. Dkt. 14).  On February 20, 2018, the District Court entered the Memorandum Opinion and Order (the "District Court Order") (Dist. Ct. Dkt. 15; Adv. Dkt. 19-2), granting the Motion to Remand.  The District Court reasoned that since April had no assets to distribute to creditors in the Bankruptcy Case, any potential judgment—regardless of the outcome—could not possibly affect the bankruptcy estate.  The District Court ordered that the "case . . . immediately be remanded to the Circuit Court of Lamar County, Mississippi."  (Adv. Dkt. 19-2 at 3-4).

Before the entry of the District Court Order, Barbara filed the Adversary Complaint on January 30, 2018, in which she asked this Court to deny the dischargeability of the debt owed to her by April under § 523 as well as to deny April's discharge under § 727.  As to the dischargeability of the debt, Barbara alleged that her claims against April for fraud, embezzlement, alienation of affection, and intentional infliction of emotional distress are not dischargeable in the Bankruptcy Case pursuant to § 523.  Barbara did not specify, however, which one of the nineteen (19) sub-subsections of § 523(a) applies to April's debt.[5]  She incorporated by reference the facts

---

[5] *See infra* at 18.

and claims set forth in the Circuit Court Complaint, a copy of which she attached to the Adversary Complaint.[6]  (Adv. Dkt. 1 at 2).  These facts are summarized as follows:

### a.    Fraud

Roger withdrew cash from joint accounts, individual accounts, or a business account for the benefit of April and April's mother.

In 2008, Roger arranged for April and her children to be housed in a "rental home" that he jointly owned with Barbara.

From 2008 until May, 2011, Roger and April engaged in a fraudulent scheme whereby Roger deposited $500.00 per month into a checking account jointly owned by Roger and Barbara, ostensibly representing rental payments.  During this same period, Roger paid for April's utility expenses in excess of $9,700.00.

Roger purchased a mobile home, paid for improvements to the mobile home and to real property owned by April's mother, and bought automobiles, tires, and other unknown property for April's benefit.

April extorted funds from Roger or obtained funds from him by forging checks or writing unauthorized checks.  Roger wrote checks payable to:  (a) April and her children in excess of $150,000.00; (b) a credit card company for a card associated with April and April's mother in the amount of $54,000.00; and (c) April's mother in the amount of $12,400.00.

(Adv. Dkt. 1-1 at 2-3).

### b.    Embezzlement

April committed fraud and embezzlement by taking funds of the marital estate from Roger and his business.

(Adv. Dkt. 1-1 at 3).

---

[6] April argues in the Motion to Dismiss that the incorporation in the Adversary Complaint of the allegations in the Circuit Court Complaint was improper.  (Adv. Dkt. 8 at 2).  The incorporation complied with Rule 10(c) of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings by Rule 7010 of the Federal Rules of Bankruptcy Procedure and which provides, in pertinent part, "[a] statement in a pleading may be adopted by reference elsewhere . . . in any other pleading or motion."  FED. R. CIV. P. 10(c).

### c.    Intentional Infliction of Emotional Distress

As an employee at Roger's farming business, April was familiar with Barbara and the Parker Children.  She nonetheless engaged in conduct and activities that were illegal and adulterous for approximately seven (7) years "until such time as Roger left the marriage at the apparent insistence of [April] due to her alleged addiction to illegal drugs and her need of his financial assistance and support which she demanded in the presence of Roger's sons."

Because of April's conduct, Barbara and the Parker Children suffered emotional distress.

(Adv. Dkt. 1-1 at 4-5).

### d.    Alienation of Affection

April intentionally, negligently, and recklessly alienated the affection of Roger from Barbara.

As a result, Barbara suffered damage to the affection and consortium with Roger and also damage to the Parker Children's normal day-to-day relationship with their father.

(Adv. Dkt. 1-1 at 4-5).

As to April's discharge, Barbara alleges that April knowingly and fraudulently "made a false oath or account" and "presented or used a false claim."  (Adv. Dkt. 1 at 2).  Although she does not cite the relevant subsection of § 727 in the Adversary Complaint, her claims for relief track the wording of § 727(a)(4):  "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account; [or] (B) presented or used a false claim."  11 U.S.C. § 727(a)(4)(A)-(B).  In support of her § 727(a)(4)(A) claim, implied from her allegations, Barbara maintains that April identified two (2) household members in her bankruptcy schedules, but at the meeting of creditors held pursuant

to § 341 on December 1, 2017 (the "Meeting of Creditors")[7] (Bankr. Dkt. 6), April stated that she is single with no dependents. (Adv. Dkt. 1 at 2). In support of her § 727(a)(4)(B) claim, also implied from her allegations, she contends that April listed in her bankruptcy schedules a debt to Roger in the amount of $77,000.00 for repayment of loans but acknowledged at the Meeting of Creditors that she had no "written confirmation" of any such debt. (Adv. Dkt. 1 at 2). Additionally, as to both of her § 727 claims, she alleges that April filed the Petition only three (3) days before the scheduled jury trial of the Circuit Court Action and that April admitted at the Meeting of Creditors that she had not received any collection notices before filing the Petition, that no judgments had been rendered against her, and that she was able to pay her debts as they became due. (Adv. Dkt. 1 at 2-3).

On March 28, 2018, April filed the Motion to Dismiss alleging that the Adversary Complaint fails to state a claim upon which relief can be granted. April contends in the Motion to Dismiss, in general, that: (a) the Court lacks subject matter jurisdiction over any claims that Roger or the Parker Children allegedly have against her; (b) Barbara lacks standing and/or capacity to assert claims belonging to Roger, the Parker Children, or the marital estate; (c) the doctrines of res judicata, release, and/or accord and satisfaction preclude any claims that refer or relate to the marital estate; (d) the Court lacks subject matter jurisdiction over any claims that the marital estate may have against her; (e) Barbara failed to join additional, necessary parties as contemplated by Rule 7019 of the Federal Rules of Bankruptcy Procedure; (f) the relief sought by Barbara is barred by the equitable defense of laches, consent, acquiescence, and waiver; (g) the claims and allegations in the Circuit Court Complaint may not be incorporated into this Court by reference;

---

[7] The Meeting of Creditors was continued and held again in January and February, 2018 (Bankr. Dkt. 22 & 43), but April testified at only the first one held in December, 2017 (Bankr. Dkt. 6).

(h) the claims in the Adversary Complaint that refer or relate to fraud are not stated with particularity as required by Rule 9 of the Federal Rules of Civil Procedure ("Rule 9"), as made applicable to adversary proceedings by Rule 7009 of the Federal Rules of Bankruptcy Procedure; (i) the Court lacks subject matter jurisdiction over the alienation of affection claim; and (j) some or all of the claims in the Adversary Complaint are barred by the statute of limitations.  (Adv. Dkt. 8 at 5-6).  Barbara filed the Response to Motion to Dismiss on April 20, 2018, in which she alleges that personal and subject matter jurisdiction are proper based on the pending Petition.  (Adv. Dkt. 13 at 3).  She also clarifies that the claims against April arise out of her own direct claims and are not claims asserted on behalf of the marital estate, which she admits is not a separate entity under Mississippi family law but, rather, is a fictitious "pot."  (Adv. Dkt. 13 at 4).

On May 17, 2018, April filed the Reply in Support of Motion to Dismiss to which she attached a copy of the Final Judgment of Divorce (Adv. Dkt. 19-1) and the District Court Order (Adv. Dkt. 19-2).  She points out that Barbara failed to address her contention that Barbara lacks standing to assert claims belonging to Roger, the Parker Children, or the marital estate.  (Adv. Dkt. 19 at 2-4).  As to the marital estate, she also points out that under Mississippi law, marital property is "any property acquired or value created by a spouse's efforts during a marriage" but that a temporary order or final judgment "creates a point of demarcation with respect to the parties and their estates."  (Adv. Dkt. 19 at 3) (citing DEBORAH H. BELL, BELL ON MISSISSIPPI FAMILY LAW § 6.02[2]; *Godwin v. Godwin*, 758 So. 2d 384, 386 (Miss. 1999)).  April thus asserts that the marital estate of Barbara and Roger ended when the Final Judgment of Divorce was rendered in 2014 so that no claim on behalf of the marital estate survived after that date, as made clear by various language in the PSA, such as, that "the parties hereto have made a settlement of all property rights between themselves and that said [PSA] and the provisions contained [therein] are full, adequate,

sufficient and complete . . . [and are] binding and obligatory upon the parties . . . ." (Adv. Dkt. 19 at 3). April then posits that the PSA released all claims that Barbara had against Roger that refer or relate to her conduct. April contends that under the PSA, Barbara cannot assert any claims belonging to Roger in the absence of a written assignment and that so far Barbara has not produced a contract assigning Roger's claims to her. (Adv. Dkt. 19 at 4).

On May 18, 2018, Barbara filed the Motion to Strike, arguing that the Reply in Support of Motion to Dismiss contains new arguments not raised in the original Motion to Dismiss and that the Final Judgment of Divorce and District Court Order attached to the Reply in Support of Motion to Dismiss are matters outside of the pleadings precluded from consideration. (Adv. Dkt. 20 at 1). Barbara asks the Court to "strike" the exhibits and to ignore any arguments that reference them. On June 5, 2018, April filed the Response to Motion to Strike, denying that the Reply in Support of Motion to Dismiss contains any new arguments.

In the Response to Motion to Dismiss, Barbara did not invoke Rule 15(a) of the Federal Rules of Civil Procedure as made applicable to adversary proceedings by Rule 7015 of the Federal Rules of Bankruptcy Procedure. At the conclusion of the Hearing, however, counsel for Barbara made a motion *ore tenus* for permission to amend the Adversary Complaint should the Court find her allegations insufficient to state a claim for relief.

**Discussion**

In support of her request for the dismissal of the Adversary Complaint, April relies on Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), as made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. The purpose of Rule 12(b)(6) is to test the formal sufficiency of a claim for relief rather than the substantive merits of the case. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE

§ 1356 (3d ed. 2004). Mindful of that purpose, the Court addresses the claims for relief under § 523 and § 727 in the Adversary Complaint separately.

**A.      § 523(a)**

Because April questions whether the Court may consider certain documents in deciding the Motion to Dismiss, the Court considers first the Motion to Strike. The Court does so in the context of its discussion of Barbara's § 523 claims because the documents that April asks the Court to "strike" relate solely to those claims.

In deciding a Rule 12(b)(6) motion, a court generally may not "go outside the complaint." *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) (citing *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). If a court considers matters beyond the four corners of the complaint, it must treat the motion to dismiss as a motion for summary judgment. *See* FED. R. CIV. P 12(d) (as adopted by FED. R. BANKR. P. 7012(b)). There are numerous exceptions to this general rule, however. For example, it is well settled that a court may consider documents attached to a motion to dismiss or a response to that motion when they are referred to in the complaint and are central to a plaintiff's claims. *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)). A court also may consider matters of public record, *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994), and information subject to judicial notice, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

Here, April attached the Final Judgment of Divorce and the District Court Order to the Reply in Support of Motion to Dismiss. The Court finds that these court documents are public filings that may be considered without converting the Motion to Dismiss into one for summary

judgment. *Cinel*, 15 F.3d at 1343 n.6. The Court, therefore, denies the Motion to Strike and considers these documents in determining the sufficiency of the § 523 claims.

Often, a creditor brings a dischargeability action after civil litigation already has taken place in another forum and asks the bankruptcy court to adjudicate the dischargeability of the judgment entered in that other forum. Sometimes, however, a creditor brings a dischargeability action in bankruptcy court before any determination of liability or damages. That is the posture of this Adversary: Barbara initially filed her state-law claims against April in Circuit Court, but April's bankruptcy filing stayed the Circuit Court Action before the entry of a final judgment, and then Barbara filed this Adversary. Because a bankruptcy court cannot declare a debt nondischargeable until the creditor establishes the existence and amount of that debt, this Adversary is the type of dischargeability action that involves a two-step process: (1) the establishment of the debt and (2) a determination of the dischargeability of that debt.

As the first step in her § 523 action, Barbara asks this Court to liquidate her state-law claims and enter a monetary judgment against April. *See Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 478-79 (5th Cir. 2009) (holding that bankruptcy courts have both subject matter jurisdiction and the constitutional authority to liquidate state-law claims as part of the adjudication of any dischargeabilty issue); *see also Countrywide Home Loans, Inc. v. Cowin (In re Cowin)*, 492 B.R. 858, 887 (Bankr. S.D. Tex. 2013) (finding that *Stern v. Marshall*, 564 U.S. 462, 479-80 (2011), left intact a bankruptcy court's authority to fully adjudge state-law claims in dischargeability actions). In summary, Barbara asserts fraud claims against April, alleging that April acted in concert with Roger to deprive Barbara of her share of the marital estate. Barbara also contends that April embezzled funds from Roger and/or his business. She seeks damages for

intentional infliction of emotional distress that April's conduct caused both her and the Parker Children. Finally, she asserts a claim for alienation of affection.

In the Motion to Dismiss, April raises a myriad of defenses to Barbara's state-law claims. April interprets Barbara's allegations in the Circuit Court Complaint, which were incorporated into the Adversary Complaint, as asserting claims on behalf of Roger, the Parker Children, and the marital estate. April then questions this Court's subject matter jurisdiction and Barbara's standing to pursue such claims. She invokes the doctrines of res judicata, release, and accord and satisfaction and argues that the allegations of fraud are not stated with particularity as required by Rule 9.

At the Hearing, counsel for April articulated these defenses with greater clarity. Generally, April questions whether Mississippi recognizes any of Barbara's causes of action with the sole exception of her alienation of affection claim.[8] Apparently, April contends that Barbara's only remedy for alleged fraud or embezzlement against the marital estate was through the division of property in the divorce action. In other words, she asserts that Barbara received all the compensation to which she was entitled to receive for the alleged dissipation of marital assets in the PSA and the Final Judgment of Divorce. April's defense potentially raises a question of first

---

[8] Mississippi is one of a handful of states that continues to recognize the tort of alienation of affection. *Fitch v. Valentine*, 959 So. 2d 1012, 1019 (Miss. 2007). A plaintiff can establish a claim for alienation of affection in Mississippi by proving the following elements: "(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss." *Knight v. Woodfield*, 50 So. 3d 995, 999 (Miss. 2011) (internal quotations omitted).

impression in Mississippi:[9]  May a spouse pursue a tort claim against a third party to recover his or her share of the marital assets, apart from any divorce proceeding?  *See Blount v. Blount*, 95 So. 2d 545 (Miss. 1957) (affirming trial court's award in favor of wife in separate tort action, later consolidated with divorce proceeding, against her father-in-law for fraudulent transfer of land and personal property belonging to marital estate).  Since this Court lacks the authority to do more than make an *Erie* guess regarding any unclear issue of state law, this issue would better be resolved by a Mississippi trial court.

A more pressing issue raised by April in the Motion to Dismiss by inference and discussed at length at the Hearing, is whether some or all of Barbara's state-law claims are personal injury tort claims that this Court lacks the authority to liquidate.  Among the jurisdictional provisions of title 28 are several special provisions that apply to personal injury tort claims.  For example, § 157(b)(5) to title 28 provides that "[t]he district court shall order that personal injury tort claims . . . shall be tried in the district court in which the bankruptcy case is pending . . . ."  28 U.S.C. § 157(b)(5).  Moreover, § 157(b)(2)(B) and § 157(b)(2)(O) of title 28 address personal injury claims as follows:  28 U.S.C. § 157(b)(2)(B) defines core proceedings as including the liquidation of contingent or unliquidated claims against the estate *except* those that are based on personal injury tort claims, and 28 U.S.C. § 157(b)(2)(O) defines core proceedings as including other matters affecting the debtor-creditor relationship, *except* personal injury tort claims.  *See* 28 U.S.C. § 157(b)(2)(B), (O).  Accordingly, despite the jurisdiction granted to bankruptcy courts under 28

---

[9] Not all of the parties' arguments regarding the viability of the state-law claims present issues of first impression.  For example, the Mississippi Supreme Court has found that the tort of alienation of affection "is personal to a husband and wife and does not contemplate children" because it "exists to protect the marital relationship, not the familial relationship as a whole."  *Brent v. Mathis*, 154 So. 3d 842, 846-47 (Miss. 2014).  Thus, the Parker Children, who are not parties to the Adversary, do not appear to have standing to bring claims for alienation of affection against April.

U.S.C. § 157(b)(1), the statute precludes a bankruptcy judge, absent waiver, from liquidating personal injury tort claims against a debtor. *See Stern v. Marshall*, 564 U.S. 462, 479-80 (2011) (holding that 28 U.S.C. § 157(b)(5) is not jurisdictional and can be forfeited or waived). So if the state-law claims are "personal injury tort claims" within the meaning of 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(O), and (b)(5), the Court lacks the statutory authority to try them.

Neither the Supreme Court nor the Fifth Circuit Court of Appeals has construed the term "personal injury" as used in 28 U.S.C. § 157(b)(5) or elsewhere in title 28. *See* 1 COLLIER ON BANKRUPTCY ¶ 3.06 (16th ed. 2018); *see also Stern*, 564 U.S. at 479 (recognizing a split of authority on this issue). Of the three approaches adopted by courts for determining whether a claim constitutes a "personal injury tort" claim, the district court in *Abraham v. Smith*, 550 B.R. 314, 321-22 (N.D. Miss. 2016), rejected both the narrow view (which requires physical injury or trauma to meet the definition) and the broad view (which includes in the definition any invasion of personal rights), in favor of a third viewpoint, called the middle or hybrid approach, where courts "weigh[] the personal nature of the injury against characteristics involving financial, business, property or contract rights." *Id.* at 321 (quotations omitted). Under this middle view, the bankruptcy court retains power over financial, contract, or property torts but not over torts involving bodily, emotional, or reputational harms. *Id.; see In re Residential Capital, LLC*, 536 B.R. 566, 572 (Bankr. S.D.N.Y. 2015) (holding that in cases where it appears that a claim might be a personal injury claim but has earmarks of a business, property, or contract claim, the bankruptcy court has the right to resolve the issue by conducting "a more searching analysis of the complaint").

Barbara's four state-law claims are certainly tort actions, but are they "personal injury" tort claims? *See, e.g.*, *Hancock v. Watson*, 962 So. 2d 627, 630 (Miss. Ct. App. 2007) (holding that

alienation of affection claims are tort actions). The Court concludes that the intentional infliction of emotional distress and alienation of affection claims clearly are personal injury tort claims under the middle approach adopted in *Abraham*. *See Sales v. Bailey (In re Bailey)*, 555 B.R. 557, 561-64 (Bankr. N.D. Miss. 2016) (holding that the term "personal injury" in § 1328(a)(4) may include non-physical injuries so long as the underlying cause of action is personal in nature and not economic only). The fraud and embezzlement claims present a closer question.

Regardless of whether all of Barbara's state-law claims are personal injury tort claims, the Court finds that the "law of the case" doctrine applies to the District Court Order. As stated by the Supreme Court, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The Fifth Circuit consistently has described the law of the case doctrine as a principle that limits the extent to which an issue will be reconsidered. *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983). The District Court has held that any potential judgment—regardless of the outcome—could not possibly affect the bankruptcy estate and, therefore, ordered that the Bankruptcy Case "immediately be remanded to the Circuit Court of Lamar County, Mississippi." (Adv. Dkt. 19-2 at 3-4). Although the District Court Order was not entered in a subsequent stage of the Adversary, the law of the case doctrine nevertheless counsels this Court not to issue a different finding from the District Court as to which forum should try Barbara's state-law claims.

For all of the above reasons, the Court concludes, *sua sponte*, that cause exists under § 362(d)(1) to modify the automatic stay, so that Barbara may liquidate her state-law claims in

Circuit Court.[10]  *See* 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").  The pending Circuit Court Action is far advanced and involves a jury trial, and, therefore, as a practical matter, the Court agrees with the District Court that the Circuit Court is the better place to resolve the state-law claims.  *See In re Pedro*, No. 11-21071, 2011 WL 3741504, at *8 (Bankr. E.D. Pa. Aug. 24, 2011) (holding that the state court before whom all pretrial preparation had occurred and in which the trial had been scheduled was the only practical choice that preserved both judicial efficiency and comity between the state and federal courts).

The Court further concludes, *sua sponte*, that the issue of dischargeability should be held in abeyance until resolution of the Circuit Court Action, at which time dischargeability can then be decided by this Court.  In that regard, the Court suggests that the parties attempt to ensure that any jury verdict is clear with respect to the standards of nondischargeability under § 523(a), given that this Court's determination of dischargeability will be based in part or in whole on the record in the Circuit Court Action under principles of collateral estoppel.  *See Cross Point Church v. Andrews (In re Andrews)*, 560 B.R. 429, 441-42 (Bankr. S.D. Miss. 2016).  The parties thus might consider (subject to the discretion of the Circuit Court) special interrogatories to the jury regarding issues of intent and the precise basis for any award of damages.  *See* Miss. R. Civ. P. 49.  If it is not clear from the jury verdict whether the standards of nondischargeability under § 523(a) have

---

[10] The Court does not remand the Adversary to Circuit Court because, *inter alia*, the Adversary involves dischargeability issues that are not present in the Circuit Court Action and this Court cannot "send back" a case to a court from which it never came.  *See* 28 U.S.C. § 1452(b) (a court may remand "on any equitable ground" any claims that were removed to the court under 28 U.S.C. § 1334).

been met, the burden of proof will remain with Barbara to prove that any award of damages is in fact nondischargeable.

Finally, the Court agrees with April that the Adversary Complaint is insufficient with respect to the allegations of Barbara's theory of nondischargeability.  Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), as made applicable to adversary proceedings by Rule 7008 of the Federal Rules of Bankruptcy Procedure, generally requires that the pleader provide "a short and plain statement of the claim showing that the pleader is entitled to relief," giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  There are, however, a total of nineteen (19) sub-subsections in § 523(a) setting forth categories of nondischargeable debts, but Barbara has failed to specify in the Adversary Complaint which category applies to April's debt.  11 U.S.C. § 523(a)(1)-(19).  Some of the exceptions to discharge clearly would not apply.  *See, e.g.*, 11 U.S.C. § 523(a)(1) (excepting certain taxes from discharge).  Other exceptions to discharge could potentially apply, such as those that involve debts traceable to fraud, but Barbara's allegations do not neatly track the language of any particular category.  It is beyond the role of this Court to speculate about which discharge exception Barbara intended to apply, and the Adversary Complaint fails to provide fair notice to April of the grounds of Barbara's dischargeability claims.

The Court does not hold that all dischargeability claims must cite the specific sub-subsection in § 523(a) in order to survive a Rule 12(b)(6) challenge.  In some instances, the facts alone will dictate the discharge exception in question.  Under these facts, however, citation to the specific sub-subsection in § 523(a) is necessary because of the ambiguous nature of Barbara's allegations.  Yet notice of the discharge exception, whether made known by citation or by clear

implication from the allegations, is important. For example, to the extent that Barbara invokes an exception under § 523(a) that includes fraud as a basis for nondischargeability, the Court agrees with April that the Adversary Complaint would be subject to the heightened pleading requirements of Rule 9. *See Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 439 (5th Cir. 1994) (noting that bankruptcy courts "should and do insist that the stringent standard imposed by Bankruptcy Rule 7009 be observed by parties claiming fraud, particularly if the party asserting fraud has first hand knowledge of the fraudulent transaction"). In that event, Rule 9 would require that Barbara allege "the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993). Barbara would have to lay out "the who, what, when, and where" of any alleged fraud to support her nondischargeability claim. *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). Alternatively, Barbara could intend to invoke an exception that does not include fraud, such as the exception to discharge for debts arising out of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); *see, e.g.*, *Keever v. Gallagher (In re Gallagher)*, 388 B.R. 694, 704 (W.D.N.C. 2008). If so, then Rule 8, not Rule 9, would govern the sufficiency of her § 523 claims.

The Fifth Circuit has long held that a court ordinarily should not dismiss a complaint except after affording the plaintiff every opportunity to state a plausible claim for relief. *See, e.g.*, *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). Under these circumstances, where the Court has lifted the stay *sua sponte* to allow the Circuit Court to resolve the state-law claims and where amendments to the Adversary Complaint will be necessary anyway to reflect the judgment of the Circuit Court, the Court denies the Motion to Dismiss without prejudice as to Barbara's § 523 claims and grants Barbara's motion *ore tenus* to allow her to cure the deficiencies in her

allegations.  The amended Adversary Complaint, in addition to outlining the relevant events that occurred in the Circuit Court Action, should cite the specific sub-subsection under § 523(a) which forms the basis of her dischargeability claim and also should state with particularity any allegations of fraud.  To avoid any undue delay, the Court orders Barbara to file the amended Adversary Complaint within twenty-one (21) days after final resolution by the Circuit Court of the state-law claims and orders April to file an answer or other responsive pleading within fourteen (14) days after service of the amended Adversary Complaint.  *See* Fed. R. Civ. P. 15(a)(3) (as adopted by Fed. R. Bankr. P. 7015).  To effectuate these deadlines, counsel for the parties should notify the Court promptly of the resolution of the Circuit Court Action.

**B.      § 727**

Barbara objects to April's bankruptcy discharge, alleging that her discharge should be denied for making a false oath and presenting a false claim in her bankruptcy schedules.  As noted previously, her allegations imply claims under § 727(a)(4)(A)-(B).  April argues that Barbara has failed to plead the allegations under § 727(a)(4)(A)-(B) with particularity in order to meet the Rule 9 standard and survive the Motion to Dismiss.  Because § 727(a)(4) requires a showing that April "knowingly and fraudulently" made the false oath or presented a false claim, the heightened pleading standard of Rule 9 applies.  The Court examines Barbara's § 727 claims under sub-subsections (a)(4)(A) and (a)(4)(B) separately.

The elements of an objection to discharge under § 727(a)(4)(A) are that:  (1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case.  *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).  In the Adversary Complaint, Barbara identifies the alleged false statement made

under oath—the size of April's household—but fails to explain why the statement in Schedule J is false or what made the statement fraudulent.  (Adv. Dkt. 1 at 2).  For example, it is possible that a debtor could report no dependents on his or her income tax returns and yet still provide financial support for other individuals in the same household.  *See In re Thomas*, No. 17-03558-NPO, at *9-13 (Bankr. S.D. Miss. Mar. 22, 2018) (adopting economic unit approach in determining a debtor's household size).  Barbara then alleges, in a conclusory fashion, that April's "annual income exceeds the threshold, triggering a means calculation test, which she has attempted to avoid." (Adv. Dkt. 1 at 2).  She fails to demonstrate, however, how April's avoidance of the means test is material to the Bankruptcy Case.

There is sparse case law applying Barbara's alternative claim under § 727(a)(4)(B).  *See Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487 (Bankr. E.D. Tenn. 2000).  The elements of an objection to discharge under § 727(a)(4)(B) are that:  (1) the debtor knowingly and fraudulently; (2) presented or used a false claim; (3) in connection with the debtor's own case.  6 COLLIER ON BANKRUPTCY ¶ 727.05.  In other words, the evidence must show that the debtor "presented or used" inflated or fictitious claims in his or her bankruptcy case with the intent to defraud. *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 619 (Bankr. N.D.N.Y. 2010) (noting that objections to discharge under § 727(a)(4)(B) generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim).  Barbara alleges in the Adversary Complaint that April presented a false claim by scheduling $77,000.00 as a debt or loan from Roger.  However, she does not allege facts that demonstrate fraudulent intent or materiality to the Bankruptcy Case.  What purpose did scheduling the allegedly false debt to Roger serve in the Bankruptcy Case?

For the same reasons discussed with respect to Barbara's § 523(a) claims and in the interest of judicial economy, the Court also denies the Motion to Dismiss without prejudice as to the § 727 claims and grants Barbara's motion *ore tenus* to amend the Adversary Complaint.  The amended Adversary Complaint should specify the allegations which form the basis of her dischargeability claim under § 727(a)(4)(A)-(B) and also state with particularity her allegations of fraud.  For efficiency, the same deadline applicable to the amendment of the Adversary Complaint with respect to the § 523(a) claims shall apply to the § 727(a)(4) claims.  In other words, Barbara shall amend the Adversary Complaint only once as to all of her claims within twenty-one (21) days after final resolution by the Circuit Court of the state-law claims, and April shall file an answer or other responsive pleading within fourteen (14) days after service of the amended Adversary Complaint. *See* FED. R. CIV. P. 15(a)(3) (as adopted by FED. R. BANKR. P. 7015).  Accordingly, the Court will hold in abeyance not only the § 523(a) claims but also the § 727 claims and, thus, the entire Adversary.  Counsel for the parties should notify the Court promptly of the resolution of the Circuit Court Action.

## Conclusion

For the above and foregoing reasons, the Court denies the Motion to Strike and denies the Motion to Dismiss without prejudice.  The Court modifies the automatic stay, *sua sponte*, to allow the liquidation of the state-law claims and the entry of a judgment by the Circuit Court, with the parties to return to this Court for a determination of Barbara's dischargeability claims under § 523(a) and § 727.  The Court stays the Adversary pending final resolution by the Circuit Court of the state-law claims, at which time Barbara shall amend the Adversary Complaint and April shall file an answer or other responsive pleading in accordance with FED. R. CIV. P. 15(a)(3) (as adopted by FED. R. BANKR. P. 7015).

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Motion to Strike is denied.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion to Dismiss is denied without prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that the automatic stay is modified, *sua sponte*, to allow the liquidation of the state-law claims and the entry of a final judgment by the Circuit Court, with the parties to return to this Court for a determination of any dischargeability issues.

IT IS FURTHER ORDERED AND ADJUDGED that the Adversary is stayed until entry of a final judgment by the Circuit Court.  Counsel for the parties shall notify the Court within fourteen (14) days of such action by the Circuit Court.

IT IS FURTHER ORDERED AND ADJUDGED that Barbara shall amend the Adversary Complaint within twenty-one (21) days after entry of a final judgment by the Circuit Court.  April shall serve an answer or other responsive pleading to the amended Adversary Complaint within fourteen (14) days after service of the amended Adversary Complaint.

##END OF OPINION##